NICK S. PUJJI (SBN 259571)
nick.pujji@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA  90017
Telephone: 213-243-6120

CARL J. LEHMAN (SBN 327321)
carl.lehman@dentons.com
DENTONS US LLP
4655 Executive Drive, Suite 700
San Diego, CA  92121
Telephone:  619-236-1414

Attorneys for Plaintiffs Ayydubs, LLC and Alyx Weiss

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYYDUBS, LLC, a Rhode Island limited liability company; and ALYX WEISS, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>KAST MEDIA, INC., a California corporation; COLIN THOMSON, an individual; WALLFLOWER GARDEN LLC, a Wyoming Limited Liability Company; STERLING RANCH TRUST; WESLEY R. STEVENS, an individual; CHRISTINE THOMSON, an individual,<br><br>    Defendants. | Case No. 2:23-cv-07601-AB (MARx)<br><br>**FIRST AMENDED COMPLAINT FOR:**<br>1. **Breach of Contract**<br>2. **Quantum Meruit**<br>3. **Unjust Enrichment**<br>4. **Open Book Account**<br>5. **Account Stated**<br>6. **Fraudulent Misrepresentation**<br>7. **Fraudulent Concealment**<br>8. **Failure to Pay Minimum Wage**<br>9. **Failure to Pay Overtime Wages**<br>10. **Failure to Provide Accurate Itemized Wage Statements**<br>11. **Failure to Timely Pay Wages Upon Termination**<br>12. **Failure to Timely Pay Wages During Employment**<br>13. **Violation of California Business. & Professions Code §§ 17200, *et. seq.***<br>14. **Intentional Fraudulent Transfer**<br>15. **Constructive Fraudulent Transfer**<br><br>**JURY TRIAL DEMANDED** |

   Plaintiffs Ayydubs, LLC and Alyx Weiss ("Alyx") (Ayydubs, LLC and Alyx,

collectively referred to as "Plaintiffs") allege as follows:

<u>**Jurisdiction and Venue**</u>

   1.  This Court has diversity jurisdiction over this action pursuant to 28

U.S.C. § 1332(a)(1), in that: (1) this is a civil action between citizens of different states, and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because one or more of the Defendants reside in the United States District Court, Central District of California (the "Central District of California"). Venue is further proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

## Parties

3.     Alyx is a citizen of and resides in the State of Rhode Island. Alyx is a successful YouTube content creator and podcaster. Alyx's YouTube channel and stage name is Ayydubs.

4.     Ayydubs, LLC is a limited liability company formed under the laws of the State of Rhode Island. Alyx is the sole member of Ayydubs, LLC.

5.     Defendant Kast Media, Inc. ("Kast") is a Delaware Corporation with its principal place of business in Van Nuys, California, which is located in the Central District of California.

6.     Defendant Colin Thomson ("Colin") is a resident of Canoga Park, California, which is located in the Central District of California. Colin is the Founder and Chief Executive Officer ("CEO") of Kast. Colin, at all times material to this action, acted on his own behalf and as an agent for each of the other Defendants named in this action, and as such, not only is liable for his own direct acts and omissions, but is also jointly and severally liable for all of the acts and omissions of his co-defendants.

7.     Defendant Christine Thomson ("Christine") is a resident of Canoga Park, California, which is located in the Central District of California. Plaintiffs are informed and believe and on that basis allege, that Christine is the spouse of Colin.

///

8.     Plaintiffs are informed and believe and on that basis alleged that, at all times relevant hereto, defendants Colin and Christine (collectively the "Thomsons") were the alter egos of Kast, and there has at all times herein existed a unity and ownership between the Thomsons and Kast such that any separateness between them has ceased to exist in that the Thomsons completely controlled, dominated, managed and operated Kast to their ends. More specifically, the Thomsons: (1) controlled the business operations of Kast, (2) were the sole shareholders in control of Kast, (3) commingled the funds and assets of the corporation with their own personal assets and used corporate funds and assets for their own personal use, (4) used, as individuals, the same business location as Kast, (5) disregarded the legal formalities and failed to maintain arm's length relationship between their own actions and those of Kast, (6) inadequately capitalized Kast, (7) used Kast as a mere shell or instrumentality for themselves, and (8) used Kast's corporate entity status to shield against personal obligations and liabilities.

9.     Defendant Wallflower Garden LLC ("Wallflower") is a limited liability company formed under the laws of the State of Wyoming and with its principal office address located at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming, 82801. Plaintiffs are informed and believe and on that basis alleged that, at all times relevant hereto, that the Thomsons were the alter egos of Wallflower, and there has at all times herein existed a unity and ownership between the Thomsons and Wallflower such that any separateness between them has ceased to exist in that the Thomsons completely controlled, dominated, managed and operated Wallflower to their ends. More specifically, the Thomsons: (1) controlled the business operations of Wallflower, (2) were the sole members in control of Wallflower, (3) commingled the funds and assets of the limited liability company ("LLC") with their own personal assets and used LLC funds and assets for their own personal use, (4) disregarded the legal formalities and failed to maintain arm's length relationship between their own actions and those of Wallflower, (5)

Case No. 2:23-cv-07601-AB (MARx)
First Amended Complaint

inadequately capitalized Wallflower, (6) used Wallflower as a mere shell or instrumentality for themselves, and (7) used Wallflower's LLC status to shield against personal obligations and liabilities.

10. Plaintiffs are informed and believe and on that basis allege, that defendant Sterling Ranch Trust (the "Trust") is a revocable living trust with the Thomsons acting as joint trustees. Plaintiffs are informed and believe and on that basis alleged that, at all times relevant hereto, that the Thomsons were the alter egos of the Trust, and there has at all times herein existed a unity of ownership and interest between the Thomsons and the Trust such that any separateness between them has ceased to exist in that the Thomsons completely controlled, dominated, managed and operated the Trust to their ends. More specifically, the Thomsons: (1) controlled the operations of the Trust, (2) were the sole trustees in control of the Trust, (3) commingled the funds and assets of the Trust with their own personal assets and used Trust funds and assets for their own personal use, (4) disregarded the legal formalities and failed to maintain arm's length relationship between their own actions and those of the Trust, (5) used the Trust as a mere shell or instrumentality for themselves, and (6) used Trust LLC status to shield against personal obligations and liabilities.

11. Defendant Wesley R. Stevens ("Stevens") is a resident of Burbank, California, which is located in the Central District of California. Plaintiffs are informed and believe, and on that basis allege, that Stevens is a podcast marketing executive who was an agent of Kast and Colin. Stevens, at all times material to this action, acted on his own behalf and as an agent for each of the other Defendants named in this action, and as such, not only is liable for his own direct acts and omissions, but is also jointly and severally liable for all of the acts and omissions of his co-defendants.

///

///

## General Allegations

### I.     Background Facts

12.     Alyx is a popular YouTube content creator. Alyx's YouTube channel, Ayydubs, has amassed 1.73 million subscribers since Alyx posted her first video in 2009.

13.     Alyx's forte is comedy. She has created, written, starred in, and produced numerous comedic YouTube videos, which have been collectively viewed millions of times by viewers.

14.     In 2018, Alyx began creating a series of YouTube videos called "Revealing Your Secrets" ("Secrets"). The premise of Secrets was that viewers would post their deepest secrets to the Ayydub YouTube channel and Alyx would record videos in which she would read and provide humorous commentary on the viewers' secrets.

15.     The Secrets series was well received by Alyx's fans and quickly became the most watched videos on her YouTube channel. Secrets had video viewership in the range of several hundred thousand to almost 5 million views.

16.     As a result of the success of the Secrets, Alyx, through her then-agent Marissa Horwitz, began approaching studios about possibly turning Secrets into a podcast. Kast was one of the production companies approached by Ms. Horwitz.

### II.     The Original Agreement with Kast

17.     In 2021, Kast (through Colin and another Kast agent Stevens) and Plaintiffs (through Ms. Horwitz) began discussing a deal by which Kast would produce a podcast version of Secrets (the "Secrets Podcast"). Colin and Mr. Stevens represented to Plaintiffs (through Ms. Horwitz) that Kast had the financial resources, industry knowledge, and the experienced personnel necessary to produce, market, and release Secrets Podcast in a professional and efficient manner (the "Original Misrepresentations").

///

18.     On September 9, 2021, Ayydubs, LLC and Kast entered into a Podcast Network Representation Agreement (the "Original Agreement"), by which Alyx agreed to create and star in the Secrets Podcast to be produced by Kast. The Original Agreement had an initial term of two (2) years and provided that Ayydubs, LLC was entitled to minimum guaranteed compensation in the amount of $275,000.00 per year, to be paid in equal monthly installments (the "Minimum Guarantee"). A redacted copy of the Original Agreement is attached hereto as **Exhibit A**, and is incorporated herein by reference.[1]

19.     Further, the Original Agreement gave Ayydubs, LLC the right to audit the books and financial records of the Kast as they related to the Secrets Podcast ("Audit Provision"). Specifically, the Original Agreement provided:

> Audit. [Ayydubs, LLC] shall have the right once per calendar year to audit Kast's books and records of the transactions underlying the Revenue Share Payments to be paid to [Ayydubs, LLC] hereunder at [Ayydubs, LLC's] sole cost and expense during the Term and for one (1) year thereafter; provided, that (i) such audit right shall apply to no more than two (2) year accounting period prior to the date of the audit; (ii) [Ayydubs, LLC] shall provide at least thirty (30) days' prior written notice of the audit; (iii) the audit shall be performed during Kast's normal business hours; and (iv) the audit must be completed within four (4) months from when the audit is commenced.

---

[1] The exhibits to the first amended complaint are identical to the exhibits to the original complaint.  On September 22, 2023, Plaintiffs submitted an application for an order for leave to file the exhibits to the original complaint under seal (Dkt. 16).  On September 27, 2023, an order granting the application was entered by the court (Dkt. 18).  To conserve judicial resources, Plaintiffs have not filed a motion to seal the exhibits to this first amended complaint and instead attach redacted copies.

20.     In or around October 2021, Colin and Mr. Stevens had an onboarding meeting with Alyx in which they reiterated Kast's Original Misrepresentations.

21.     At the end of October 2021, Alyx and Kast's producers began brainstorming and developing the format of the Secrets Podcast. From the outset, working with Kast was a challenge. Generally, Kast's producers were unorganized and their work was sloppy. Kast's editors were also chronically late in formatting and preparing Secrets Podcast for production, which resulted in significant delays. The first episode of the Secrets Podcast was not filmed until June 3, 2022 and was not released to the public until June 23, 2022.

22.     From June 23 to December 16, 2022, Alyx filmed 25 episodes of the Secrets Podcast for Kast. In June 2022, Kast stopped paying Ayydubs, LLC the monthly Minimum Guarantee per the Original Agreement.

23.     On November 8, 2022, Alyx received an email from Colin ("November 8 Email"). In relevant part, the November 8 Email read: "I understand that you've expressed concerns about launching new live events and subscriptions based revenue on the show, given time of payment from Kast, and I want to alleviate any concerns here." Colin went on to state that the most recent outstanding Minimum Guarantee payment had been issued on November 8, 2022, and that he was working to make sure the next Minimum Guarantee was  paid in a timely fashion. Colin then asked Alyx to collaborate with Kast regarding creating additional revenue streams for Secrets Podcast because, in Colin's words, Secrets Podcast was "underwater just on [Minimum Guarantee] payments alone." Colin concluded the email stating: **"[w]e're proud of the show and believe it will be successful in the long run, as will our overall partnership with you!"**

///
///
///
///

24.     Alyx responded to the email by adding her attorney Lauren Schwartz since Colin was "discussing the terms of our deal." Ms. Schwartz responded to the email stating that Alyx was "absolutely open" to pursuing new revenue opportunities for the Secrets Podcast, but also asked Colin to confirm "that Kast will continue to pay [the Minimum Guarantee] monthly, as is required per the [Original Agreement] and any true up for skipped payments be made." Colin reassured Ms. Schwartz that the payment issues would be resolved and the email participants continued to collaborate regarding developing additional revenue streams for the Secrets Podcast.

25.     However, in or around November 18, 2023, Ms. Schwartz was contacted by Neil Sacker, an attorney for Kast. Mr. Sacker informed Ms. Schwartz that Kast intended to terminate the Original Agreement.

**III.    The Termination Agreement**

26.     On November 22, 2022, Mr. Sacker sent Ms. Schwartz an email entitled: "'Revealing Your Secrets' --- Termination Letter" (the "Termination Letter"). The Termination Letter falsely claimed that Ayydubs, LLC had committed "numerous breaches" of the Original Agreement. Specifically, the Termination Letter claimed that Ayydubs, LLC violated the Original Agreement because Alyx included content that was "vulgar, obscene, or offensive" on the Secrets Podcast. The Termination Letter then listed featured secrets that Kast supposedly now found vulgar, obscene, or offensive. This alleged breach was clearly pretextual as Alyx's shows had always included edgy humor and Kast producers were heavily involved in the creation of Secrets Podcast, including in deciding which viewer secrets were to be featured. The Termination Letter also unfoundedly claimed that Alyx was purchasing subscribers to her YouTube channel.

27.     Given the unprofessional nature of Kast's operations, their delays in making Minimum Guarantee payments, the unfounded and obviously contrived accusations contained in the Termination Letter, and the Termination Agreement

Misrepresentations described below, Plaintiffs were induced to enter into a settlement agreement with Kast (the "Termination Agreement"). A redacted copy of the Termination Agreement is attached hereto as **Exhibit B** and is incorporated herein by reference.[2]

28.     The Termination Agreement provided that all obligations under the Original Agreement terminated as of November 22, 2022 except for "any obligations which would have otherwise survived the expiration of the Term had the Parties not entered into this Termination Agreement."  The Termination Agreement also included a mutual release of claims. In exchange for the termination of the Original Agreement and the release of claims, Kast agreed to pay Ayydubs, LLC three (3) months of outstanding Minimum Guarantee payments in the amount of $68,750.00 ("Termination Payment").

29.     Kast, by and through Colin and Mr. Sacker, represented that if Ayydubs, LLC executed the Termination Agreement then Kast would pay Ayydubs, LLC the Termination Payment, which represented the three (3) months of outstanding Minimum Guarantee payments.  Of course, this was on the heels of Kast, by and through Colin and Mr. Sacker, falsely claiming breaches of the Original Agreement, and maliciously threatening prosecution and liability therefor. ("Termination Agreement Misrepresentations").

30.     To date, Kast has not paid any portion of the Termination Payment to Ayydubs, LLC.

31.     Notably, the mutual release contained in the Termination Agreement seeks to waive claims relating to Alyx's "employment, termination, resignation, or separation from employment with Kast." However, the mutual release also states that "to the extent that the same may not legally be released or waived, this general

---

[2]  While the copies of the exhibits being submitted to the court for filing are redacted, Plaintiffs will attach unredacted copies to the first amended complaint to be served on the newly-added parties to the action.

Case No. 2:23-cv-07601-AB (MARx)
First Amended Complaint

release and waiver of claims excludes, and the releasing Party does not waive, release, or discharge . . . claims which cannot be waived by law." California Labor Code § 206.5 provides that "[a]n employer shall not require the execution of a release of a claim or right on account of wages due, or to become due . . . unless payment of those wages have been made. A release required or executed in violation of the provisions of this section shall be null and void as between the employer and employee." Pursuant to Labor Code § 206.5, the mutual release is null and void with respect to Alyx's claims for unpaid wages as alleged herein. The Mutual Release is further rendered null and void due to Kast's failure to pay the Termination Payment to Ayydubs, LLC in breach of the Termination Agreement.

32. On April 25, 2023, Ms. Schwartz emailed Colin and Mr. Sacker stating: "[w]e are still waiting on payment and it has been two months. Can you give us an ETA?"

33. On May 15, 2023, Colin emailed Ms. Schwartz and requested that Alyx execute a Non-Disclosure Agreement ("NDA"). Colin claimed that Kast was "being acquired by another company" and the other company needed to "settle balances as part of the transaction. Colin further claimed that "[b]ecause the deal is not public yet, [the other company] needs an NDA in place, so they can move forward." Ms. Schwartz responded that Alyx would not execute the NDA and asked Colin to confirm when the Termination Payment would be made to Ayydubs, LLC. Colin did not respond to this email or an additional email that Ms. Schwartz sent inquiring about the Termination Payment on June 5, 2023.

34. On June 14, 2023, Mr. Sacker emailed Ms. Schwartz and stated that Kast had entered into a Letter of Intent whereby a company called LiveOne would allegedly purchase the assets of Kast. Mr. Sacker's email further stated that: "[a] key condition to closing of the transaction is the settlement of your balance. In the event that Kast is unable to close the LiveOne asset sale, it will likely declare bankruptcy under Section 7 or Subchapter 5 of Section 11 of the Bankruptcy

Code." Finally, Mr. Sacker stated that Kast "anticipates presenting a settlement offer within the next one to two weeks. I will provide you with necessary details as soon as they become available."

35.     Ms. Schwartz responded asking for clarification about whether Kast would make the Termination Payment as outlined in the Termination Agreement. Mr. Sacker provided a prevaricating response that he would have to check with Mr. Colin, but concluded his email by saying that Kast's financial situation was "not great".

36.     To date, and despite repeated follow-up demands, Kast has still improperly withheld the Termination Payment.

## IV.    Alyx's Employment Relationship with Kast

37.     Plaintiffs are informed and believe, and on that basis allege, that Kast improperly classified Alyx as an independent contract when she was in fact a statutory employee of Kast. Pursuant to California Labor Code ("Labor Code") § 3357, Alyx is presumed to have been the employee of Kast. The use of the label "independent contractor" in the Original Agreement is not determinative of whether an employment relationship existed. *See Dynamex Operations W. v. Superior Ct.,* 4 Cal. 5th 903, 962, 416 P.3d 1, 39 (2018) (a worker's status is not determined "simply by assigning the worker the label 'independent contractor.'").

38.     To rebut the presumption that Alyx was the employee of Kast, Defendants must satisfy California's ABC Test, as codified at Labor Code § 2775 *et. seq.* The ABC Test requires Kast to prove each of the following:

a.     That Alyx was free from the control of Kast in the performance of work, both under contract and in fact;

b.     That Alyx performed work that was outside the usual course of Kast's business; and

c.     That Alyx was customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for Kast.

39.     During the course of their relationship, Kast exercised control over the manner in which Alyx performed work under the terms of the Original Agreement. Specifically, the Original Agreement provided that "[Kast] shall cause [Alyx] to, make good faith efforts to incorporate all creative input provided by Kast with respect to the Podcast Content, including, without limitation, with respect to guests, panelists, topics and any other creative element." The Original Agreement also stated that: "Kast shall have the right to, and to require [Ayydubs, LLC]and/or [Alyx] to, modify the Podcast Content to conform to the standards and practices set forth in subparagraph 6(a) below and/or such other standards and practices as may be required for the distribution and other exploitation of the Podcast Content . . . and [Ayydub, LLC] shall modify (or shall cause [Alyx] to modify) as so required by Kast to conform to such standards and practices." Subparagraph 6(a) set forth types of podcast content that Kast prohibited Alyx from including on Secrets Podcast.

40.     Kast also exercised control, in fact, over the details of Plaintiff's work. With respect to every episode, Kast producers would review, provide feedback and revisions to the "run of the show" (an item-by-item sequence of events in a show), which was created by Alyx. Kast producers also provided input about episode subject matter, including episode themes and which secrets to feature.

41.     During the filming of each episode, there was typically between two to four Kast employees in the backroom of the studio watching the filming. After an episode was shot, producers would provide "notes" (written feedback). Kast producers also gave instructions to Alyx about what she could or could not include on Secrets Podcast. For example, on one occasion Kast producers told Alyx that she could not have one of her friends perform a song at the end of an episode.

42.     Kast, pursuant to the Original Agreement, also exercised control over Alyx's intellectual property rights related to the Secrets Podcast. Specifically, the Original Agreement provided that Kast retained all "right, title, interest in and to the

Podcast Content and all names, trademarks, service marks, and logos and other intellectual property owned or controlled by [Kast] or [Alyx] . . . including any such intellectual property created by [Alyx]."

43.    During her engagement with Kast, Alyx understood that she was performing work that was within Kast's usual course of business. Specifically, Kast was, and is, a production company that specializes in creating, marketing, and distributing podcasts similar to the Secrets Podcast. Plaintiffs are informed and believe, and on that basis allege, that Kast directly employed other podcasters like Alyx.

44.    During the course of employment with Kast, Alyx did not engage in, or offer to engage in, podcast content creation for any other individual or entity other than Kast.

45.    None of the exceptions to the ABC Test under Labor Code § 2775 *et. seq.* apply to Alyx's relationship with Kast.

**V.    Fraudulent Transfer of Assets**

46.    Plaintiffs are informed and believe and on that basis allege, that in or around August 1, 2023, Thomsons transferred, via quitclaim deed, a piece of realty located at 24350 Sterling Ranch, Canoga Park, CA 91304 (the "Property") to the Trust and Wallflower (the "Transfer.")

**FIRST CAUSE OF ACTION**

**(Breach of Written Contract)**

**(By Ayydubs, LLC Against Kast)**

47.    Paragraphs 1 through 45 are re-alleged and reincorporated herein.

48.    On November 22, 2022, Ayydubs, LLC and Kast entered into the Termination Agreement, which is a valid, binding, and enforceable written contract.

49.    By executing the Termination Agreement, Ayydubs, LLC agreed to terminate the Original Agreement and release all claims against Kast, in exchange for Kast paying the Termination Payment.

50.     Ayydubs, LLC performed all its obligations under the Termination Agreement or its performance was waived by Kast, all conditions precedent for Kast's performance occurred or were waived by Kast, and Ayydubs, LLC did not waive any of Kast's obligations or performance.

51.     However, Kast has materially breached the Termination Agreement by failing to pay any portion of the Termination Payment as of the date of the filing of this action.

52.     As a result of Kast's breach, Ayydubs, LLC has sustained compensatory damages in the minimum amount of $68,750.00, plus interest.

53.     In the alternative, if the Termination Agreement should, in any way, be found invalid, nonbinding, or unenforceable, Ayydubs, LLC pleads the following claim for breach of the Original Agreement.

54.     On September 9, 2021, Ayydubs, LLC and Kast entered into the Original Agreement, which is a valid, binding, and enforceable written contract.

55.     By executing the Original Agreement, Ayydubs, LLC agreed that Alyx would create and star in the Secrets Podcast in exchange for the Minimum Guarantee.

56.     Ayydubs, LLC performed all its obligations under the Original Agreement or its performance was waived by Kast, all conditions precedent for Kast's performance occurred or were waived by Kast, and Ayydubs, LLC did not waive any of Kast's obligations or performance.

57.     However, Kast materially breached the Original Agreement by failing to pay, in a timely fashion, portions of the Minimum Guarantee.

58.     As a result of Kast's breach, Ayydubs, LLC has sustained compensatory damages in the amount of the unpaid balance of the Minimum Guarantee, in an amount to be proven at trial.

///

///

14

## SECOND CAUSE OF ACTION

### (Quantum Meruit)

### (By Plaintiffs Against All Defendants)

59.     Paragraphs 1 through 57 are re-alleged and reincorporated herein.

60.     Plaintiffs allege, in the alternative to the breach-of-contract claims contained herein, that Plaintiffs are entitled to recover in *quantum meruit* if it is determined that either a valid and enforceable contract does not exist, Plaintiffs performed services that were outside of or over and above those contemplated by the existing contract, or that the existing contract is void, invalid, or unenforceable.

61.     Plaintiffs provided valuable services in good faith to Defendant as described herein.

62.     The services were at Defendants' behest and Defendants knowingly and voluntarily accepted and benefited from the services that Plaintiffs provided.

63.     Defendants were aware and knew that Plaintiffs were not providing the services gratuitously.

64.     Defendants knew that Plaintiffs reasonably expected to be compensated for the services rendered.

65.     As described herein, Plaintiffs have repeatedly demanded payment from Defendants for services rendered.

66.     Defendants shave failed to pay Plaintiffs for the reasonable value of the services provided.

67.     The reasonable value of the services provided by Plaintiffs is $68,750.00, plus interest, costs, and expenses.

68.     As a result of Defendants' failure to pay Plaintiffs for the reasonable value of the services provided, Plaintiffs have been damaged in the amount of $68,750.00, plus interest, costs, and expenses.

///

///

**THIRD CAUSE OF ACTION**

**(Unjust Enrichment)**

**(By Plaintiffs Against All Defendants)**

69.     Paragraphs 1 through 67 are re-alleged and reincorporated herein.

70.     Defendants improperly received assets and benefits from the Plaintiff, including but not limited to Plaintiffs' intellectual property rights and the value of services rendered, as arising from their fraudulent misrepresentations and omission as described herein, and without providing equivalent value therefore.

71.     Defendants have been unjustly enriched by their actions, as described herein.

72.     As a direct and proximate cause of Defendants' unjust enrichment, the Plaintiffs have suffered, and continue to suffer consequential damages in the form of the value of assets and benefits improperly obtained by Defendants, loss of profits, interest, and other damages in an amount according to proof at trial.

**FOURTH CAUSE OF ACTION**

**(Open Book Account / Accounting)**

**(By Plaintiffs Against All Defendants)**

73.     Paragraphs 1 through 71 are re-alleged and reincorporated herein.

74.     Plaintiffs and Defendants had financial transactions with each other relating to Alyx's podcast creation for Kast.

75.     Plaintiffs, in the regular course of business, kept an account of debits and credits involved in the transactions.

76.     Defendants owe Plaintiffs $68,750.00 on the account.

77.     Further, Plaintiffs seek an accounting of Kast's books and records pursuant to the Audit Provision, which is still in full force and effect despite the Termination Agreement as the Termination Agreement provides: "that any obligations would have otherwise survived the expiration of the Term had the Parties not entered into this Termination Agreement shall continue to survive as of

16

the Termination Date."

78.     As detailed herein, the parties' special, confidential, and close relationship requires an accounting and the balance due to Plaintiffs can only be confirmed as a result thereof.

### FIFTH CAUSE OF ACTION

### (Account Stated)

### (By Plaintiffs Against All Defendants)

79.     Paragraphs 1 through 77 are re-alleged and reincorporated herein.

80.     Defendants owe Plaintiffs money from previous financial transactions relating to Alyx's podcast creation for Kast.

81.     Plaintiffs and Defendants, by words or conduct, agreed that the amount that Plaintiffs claimed to be due from Defendants was the correct amount owed.

82.     Defendants, by words or conduct, promised to pay the stated amount to Plaintiffs.

83.     Defendants have not paid Plaintiffs all of the amount owed under this account.

84.     Defendants owe Plaintiffs $68,750.00 on the account.

### SIXTH CAUSE OF ACTION

### (Fraudulent Misrepresentation)

### (By All Plaintiffs Against All Defendants)

85.     Paragraphs 1 through 83 are re-alleged and reincorporated herein.

86.     Kast made a series of misrepresentations to Plaintiffs, including but not limited to the Original Misrepresentations and the Termination Agreement Misrepresentations.

87.     Plaintiffs are informed and believe, and on that basis allege, that Kast's Original Misrepresentations were made by and through Kast's Founder and CEO, Colin. The Original Misrepresentations were made to Ms. Horowitz who, at the time, was an agent of Plaintiffs. *See City of Indus. v. City of Filmore*, 198

17

Cal.App.4th 191, 211 (2011) (reliance by a plaintiffs' agent may be imputed to the plaintiffs).

88.     Plaintiffs are informed and believe, and on that basis allege, that the Original Misrepresentations were materially false and misleading because, at the time they were made, Kast actually had limited financial resources, lacked meaningful experience producing podcasts, and lacked a skilled staff that was capable of producing podcasts in a professional and efficient manner.

89.     Plaintiffs are informed and believe, and on that basis allege, that Defendants intentionally and maliciously made the Original Misrepresentations in order to induce Plaintiffs to execute the Original Agreement.

90.     In the alternative, Plaintiffs are informed and believe, and on that basis allege, that Defendants had no reasonable grounds for believing that the Original Misrepresentations were true and that Defendants made the Original Misrepresentations in order to induce Plaintiffs to execute the Original Agreement.

91.     Plaintiffs relied to their detriment on the Original Misrepresentations by executing the Original Agreement on September 9, 2021.

92.     Plaintiffs' reliance on the Original Agreement Representations was justifiable because Plaintiffs had no reason to doubt the truthfulness of Defendants' representations as Plaintiffs were unaware of, and could not have reasonably discovered, the true state of Kast's business operations.

93.     In addition to the Original Misrepresentations, plaintiffs are informed and believe, and on that basis allege, that the Termination Agreement Misrepresentations were materially false and misleading because, at the time they were made, Defendants had no intention to abide by any portion of the Termination Agreement.

94.     Plaintiffs are informed and believe, and on that basis allege, that Defendants intentionally made the Termination Agreement Misrepresentations in order to induce Plaintiffs to execute the Termination Agreement.

95.     In the alternative, Plaintiffs are informed and believe, and on that basis allege, that Defendants had no reasonable grounds for believing that the Termination Agreement Misrepresentations were true and that Defendants made the Termination Agreement Misrepresentations in order to induce Plaintiffs to execute the Termination Agreement.

96.     Plaintiffs relied to their detriment on the Termination Agreement Misrepresentations by executing the Termination Agreement on November 22, 2022.

97.     Plaintiffs' reliance on the Termination Agreement Misrepresentations was justifiable in that Plaintiffs had no reason to doubt the truthfulness of Defendants' representations that Defendants would adhere to the terms and conditions of the Termination Agreement.

98.     Defendants' intentional misrepresentations, or in the alternative negligent misrepresentations, including Plaintiffs' reliance thereon, were the direct and proximate cause of Plaintiffs' losses, which Plaintiffs would not have sustained but for Defendants' fraud and/or negligence.

99.     Plaintiffs sustained damages including but not limited to reliance damages, benefit of the bargain damages, and consequential damages, which in turn also include Plaintiffs' attorneys' fees, expenses, and costs.

100.    Defendants knowingly and intentionally provided false and misleading information to Plaintiffs, with the intent to vex, injure, annoy and defraud Plaintiffs, such as to constitute oppression, fraud, and malice under California Civil Code § 3294, entitling Plaintiffs to punitive damages in an amount appropriate to punish and set an example of Defendants.

## SEVENTH CAUSE OF ACTION

### (Fraudulent Concealment)

### (By Plaintiffs Against All Defendants)

101.    Paragraphs 1 through 99 are re-alleged and reincorporated herein.

102. Defendants and Plaintiffs were in a fiduciary relationship as described herein.

103. Defendants intentionally, or in the alternative negligently, failed to disclose certain facts relating to Kast's financial resources, experience producing podcasts, and personnel ("Omissions") that were known only to Defendants and that Plaintiffs could not have discovered.

104. Plaintiffs did not know of the Omissions.

105. Defendants maliciously intended to deceive Plaintiffs by concealing the Original Omissions.

106. In the alternative, Defendants were negligent in failing to inform Plaintiffs of the Omissions.

107. Had the Omissions been disclosed, Plaintiff reasonably would have behaved differently.

108. Plaintiffs sustained damages including but not limited to reliance damages, benefit of the bargain damages, and consequential damages, which in turn also include Plaintiffs' attorneys' fees, expenses, and costs.

109. Defendants' intentional omissions, or in the alternative negligent omissions, including Plaintiffs' reliance thereon, were a substantial factor in Plaintiffs' losses, which Plaintiffs would not have sustained but for Defendants' fraud and/or negligence.

110. Defendants knowingly and intentionally concealed material information from Plaintiffs, with the intent to vex, injure, annoy and defraud Plaintiffs, such as to constitute oppression, fraud, and malice under California Civil Code § 3294, entitling Plaintiffs to punitive damages in an amount appropriate to punish and set an example of Defendants.

///

///

///

**EIGHTH CAUSE OF ACTION**

**(Failure to Pay Minimum Wage in Violation of Labor Code §§ 1194, 1197, 1197.1 and IWC Order No. 11-2001, §4)**

**(By Alyx Against All Defendants)**

111.   Paragraphs 1 through 109 are re-alleged and reincorporated herein.

112.   Labor Code §§ 1194, 1197, 1197.1 and Industrial Welfare Commission ("IWC") Order No. 11-2001, §4 require employers to pay their employees not less than the applicable minimum wage for all "hours worked."

113.   Alyx was the employee and performed work for Kast.

114.   Pursuant to Labor Code § 558.1, Colin is a natural person who as an owner, officer, or managing agent of Kast, may be held personally liable for violating, or for causing another individual or entity to violate, Labor Code § 1194.

115.   Defendants paid Alyx less than the then-applicable minimum wage for some or all hours that Alyx worked.

116.   Defendants' failure to pay Alyx the required minimum wage violates Labor Code §§ 1194, 1197, 1197.1, and IWC Order No. 11-2001, § 4. Pursuant to those provisions, Alyx is entitled to recover the unpaid balance of her minimum wage compensation as well as interest, costs, and attorneys' fees.

117.   Pursuant to Labor Code § 1194.2, Alyx is also entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

**NINTH CAUSE OF ACTION**

**(Failure to Pay Overtime Wages in Violation of Labor Code §§ 510, 1194, and 1198)**

**(By Ayydubs, LLC Against All Defendants)**

118.   Paragraphs 1 through116 are re-alleged and reincorporated herein.

119.   Labor Code § 1198 makes it unlawful to employ an employee under conditions of labor that are prohibited by the applicable IWC Wage Order.

120.   Pursuant to IWC Order No. 11-2001, § 3 and Labor Code § 510, Alyx was entitled to overtime compensation at one-and-one-half times the regular rate of pay for hours worked in excess of eight (8) hours in a day, forty (40) hours in a week, or for the first eight (8) hours worked on the seventh day of work, and to overtime compensation at two (2) times the regular rate of pay for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh day of work.

121.   Alyx was not paid at the applicable overtime rate of pay for overtime hours worked.

122.   Accordingly, pursuant to Labor Code § 1194, Alyx is entitled to recover unpaid overtime compensation, as well as interest, costs, and attorneys' fees.

### TENTH CAUSE OF ACTION

**(Failure to Provide Itemized Wage Statements
in Violation of Labor Code § 226(a))**

**(By Alyx Against All Defendants)**

123.   Paragraphs 1 through 121 are re-alleged and reincorporated herein.

124.   Labor Code § 226(a) provides that every employer shall, at the time of each payment of wages, furnish each of his or her employees with an accurate itemized statement showing, amongst other items: gross wages earned, total hours worked, all deductions, net wages earned, the inclusive dates of the pay period, the name of the employee, the last four digits of the employee's social security number or an employee identification number, the name and address of the legal entity that is the employer, all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

///

///

///

125.

126.   Defendants have intentionally and willfully failed to provide Alyx with complete and accurate wage statements as required by Labor Code § 226(a).

127.   As a result of Defendants' violation of Labor Code § 226(a), Alyx has suffered injury and damages to her statutorily protected right to receive an accurate itemized wage statement.

128.   Alyx is therefore entitled to recover from Defendants the greater of her actual damages caused by Defendants' violation of Labor Code § 226(a), or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000). Under Labor Code § 226, Alyx is also entitled to an award of costs and reasonable attorney's fees.

## ELEVENTH CAUSE OF ACTION

### (Failure to Timely Pay Wages Upon Termination in Violation of Labor Code §§ 201, 202, and 203)

### (By Alyx Against All Defendants)

129.   Paragraphs 1 through 126 are re-alleged and reincorporated herein.

130.   Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves employment, the employee's wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours prior notice of his or her intention to resign, in which case the employee is entitled to all wages at the time of resignation.

131.   Defendants willfully failed to pay Alyx all wages dues upon separation of employment in violation of Labor Code §§ 201 and 202.

132.   Labor Code § 203 provides that if an employer willfully fails to pay wages owed, in accordance with Labor Code §§ 201 and 202, then the unpaid

wages shall continue as a penalty from the due date, and at the same daily rate up to a maximum of thirty (30) days.

133.   Alyx is therefore entitled to recover from Defendants the statutory penalty for each day, up to a maximum of thirty (30) days, pursuant to Labor Code § 203.

## TWELFTH CAUSE OF ACTION

### (Failure to Timely Pay Wages During Employment in Violation of Labor Code § 204)

### (By Alyx Against All Defendants)

134.   Paragraphs 1 through 131 are re-alleged and reincorporated herein.

135.   Labor Code § 204 provides that all wages earned by an employee between the 1st and the 15th days, inclusive, of any calendar month, are due and payable between the 16th and the 26th day of the month during which the labor was performed. Labor Code § 204 further provides that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, are due and payable between the 1st and the 10th day of the following month.

136.   Defendants willfully failed to pay Alyx all wages due, including minimum and overtime wages, within the time periods specified in Labor Code § 204.

137.   Alyx is therefore entitled to recover all statutory penalties and remedies available pursuant to Labor Code § 204.

## THIRTEENTH CAUSE OF ACTION

### (Violation of California Business & Professions Code §§ 17200, *et. seq.*)

### (By Plaintiffs Against All Defendants)

138.   Paragraphs 1 through 135 are re-alleged and reincorporated herein.

139.   Defendants' conduct, as alleged above, has been unfair, unlawful, and harmful to Plaintiffs.

24

140.   A violation of Business & Professions Code §§ 17200 *et. seq.* can be predicated on any violation of state law, including violations of Labor Code §§ 201, 202, 204, 226, 510, 1194, 1197, and 1197.1.

141.   Pursuant to Business & Professions Code §§ 17200 *et. seq.,* injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair business practices as alleged herein. Plaintiffs are informed and believe, and on that basis allege, that Defendants have committed and will continue to commit the above-described unlawful acts unless restrained or enjoined by this Court. Plaintiff have no adequate remedy at law, in that pecuniary compensation alone would not afford adequate and complete relief. For example, pecuniary compensation will not prevent Plaintiffs from continuing to exploit the intellectual property rights of Plaintiffs. The above-described acts will cause irreparable harm to Plaintiffs unless Defendants are restrained from committing further illegal acts.

142.   Accordingly, Plaintiffs are entitled to restitution of the wages withheld and retained by Defendants and a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiffs.

## FOURTEENTH CAUSE OF ACTION

### (Intentional Fraudulent Transfer, Cal. Civ. Code § 3439.04 (a)(1))

### (By Plaintiffs Against Trust and Wallflower)

143.   Paragraphs 1 through 140 are re-alleged and reincorporated herein.

144.   Plaintiffs have a right to payment from Kast and Thomsons in the amount of at least $68,750.00, plus interest.

145.   Plaintiffs are informed and believe and on that basis allege, that in or about August 1, 2023, the Thomsons (as the alter egos of Kast), knowingly and willfully conspired between themselves to hinder, delay and/or defraud the creditors of Kast, including Plaintiffs in the collection of monies owed by Kast.

146.   The Thomsons did transfer assets, including but not limited to the Property, to defendants Trust and Wallflower.

147.   Plaintiffs are informed and believe and on that basis allege, that the above referenced transfers were undertaken with an intent to hinder, defraud and/or delay Plaintiffs in the collection of sums owed to Plaintiffs by Kast.

148.   Plaintiffs are informed and believe and on that basis allege, that the transferred assets, including but not limited to the Property, were received by Trust and Wallflower with the knowledge of the Thomsons' (as the alter ego of Kast) intent to hinder, defraud, and/or delay Plaintiffs in the collection of sums owed to Plaintiffs by Kast.

149.   As a result, Plaintiffs have been harmed and the conduct of the Thomsons, the Trust, and Wallflower is a substantial factor in causing the Plaintiffs' harm.

## FIFTEENTH CAUSE OF ACTION

### (Constructive Fraudulent Transfer, Cal. Civ. Code § 3439.04 (a)(2))

### (By Plaintiffs Against Trust and Wallflower)

150.   Paragraphs 1 through 147 are re-alleged and reincorporated herein.

151.   Plaintiffs have a right to payment from Kast and Thomsons in the amount of at least $68,750.00, plus interest.

152.   Plaintiffs are informed and believe and on that basis allege, that in or about August 1, 2023, the Thomson transferred assets, including but not limited the Property, to defendants Trust and Wallflower.

153.   Plaintiffs are informed and believe and on that basis allege, that the Thomsons did not receive a reasonably equivalent value in exchange for the transfer of the Property.

154.   Plaintiffs are also informed and believe and on that basis allege, that the Thomsons (by and through their alter ego Kast) were engaged or about to engage in a business and/or transaction for which the remaining the remaining assets of Kast (as the alter ego of the Thomsons) were unreasonably small in relation to the business or transaction and/or that Kast intended to incur, or believed

or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

155.   As a result, Plaintiffs have been harmed and the conduct of the Thomsons, the Trust, and Wallflower is a substantial factor in causing the Plaintiffs' harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendants for the following:

a)   For an award of compensatory damages, including contract damages, consequential damages, incidental damages, and rescissory damages, in an amount according to proof;

b)   For all unpaid wages due, including but not limited to minimum wage, overtime wages, and interest thereon pursuant to Labor Code §§ 510, 1194, 1197, 1197.1, 1198, and IWC Order No. 11-2001;

c)   For liquidated damages in an amount equal to the wages unlawfully withheld and interest thereon pursuant to Labor Code § 1194.2;

d)   For damages or statutory penalties for failure to provide accurate itemized wage statements as required by Labor Code § 226;

e)   For reasonable attorneys' fees incurred in pursuing the recovery of wages pursuant to Labor Code §§ 226 and 1194, as well as the other claims as described herein;

f)   For punitive damages;

g)   For an award of prejudgment and post-judgment interest in the maximum amount allowed by law;

h)   For costs of the suit herein;

///

///

///

Case No. 2:23-cv-07601-AB (MARx)
First Amended Complaint

1         i)     For restitution and other equitable/injunctive relief pursuant to the

2    alternative claims and/or Business & Professions Code § 17200 *et. seq.*; and

3         j)     For such other relief as the Court may deem appropriate.

4

5    Dated: December 4, 2023               DENTONS US LLP

6                                      By:   *s/Nick S. Pujji*

7                                           Nick S. Pujji
                                            Carl J. Lehman

8

9                                      Attorneys for Plaintiffs Ayydubs, LLC
                                       and Alyx Weiss

10   124406997\V-5

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                       Case No. 2:23-cv-07601-AB (MARx)
                                       First Amended Complaint

# Exhibit A

Exhibit A to Complaint

Podcast Network Representation Agreement


Document Redacted in Full

# Exhibit B

Exhibit B to Complaint

Termination Agreement


Document Redacted in Full